Mr. Einhorn, you have reserved one minute for rebuttal. If I need it. If you need it. All right. Thank you. Please. May it please the court. My name is John Einhorn from New Haven. I represented Mr. Harris at trial and of course here this morning. The issue I really wanted to discuss before the court this morning had to do with the obstruction enhancement. As your honors may recall from the file, Mr. Harris is driving. He gets pulled over by the DEA and they seize cash, I think about $4,000. He seizes his cell phone and there's 32 extra pills, 32 oxycodone pills. Not surprising because Mr. Harris has sickle cell disease and that's the nub of this case. He just- I mean at the same time they arrested the person he sold to, right? Except he wouldn't have known that. He wasn't in the car at the time. He wouldn't have known that there was a subsequent arrest or contemporaneous arrest of Mr. Myers. So what happens is Mr. Harris- You wouldn't have known it when? At the time he wrote the letter? I beg your pardon, your honor? Sure. At the time he wrote the letter to the DEA saying, can I have my stuff back? He was not aware that Mr. Myers had been arrested? No, your honor. I don't think the investigation had gotten quite that far. What happened is he gets picked up in September and then he writes the letter in November. No, I agree. One of the questions- The letter said- Go ahead. But the letter said, I want my things back, my pills back, because what I was doing with the co-defendant, I wasn't selling him pills. I was there to give him an invoice because I'm in the flooring business and produced a fake flooring business. So how can you say he didn't know about the existence of the co-defendant when the content of the letter itself is, give me my pills back because, give me my money back because I was submitting, I wasn't selling my pills. I was there giving my flooring invoice. No, he knew obviously about Mr. Myers, obviously. But my point being that he didn't know there was a criminal investigation, though, at that time. He had no reason whatsoever- I mean, isn't that sort of bizarre? I mean, the government doesn't just go around seizing property, right? The reason it does so is because they probably want us to believe it's evidence in a crime. Right? So why wouldn't we just say, well, the government seized- I mean, and the letter shows that he understands the reason why the government seized the property was because they thought it was implicated in criminal activity, right? Well, I- So you're saying even though he knew that they took it because they believed it was implicated in criminal activity, he couldn't reasonably have known that they were investigating that criminal activity? The very same one that he's trying to refute in the letter? Well, there's a number of factors that 3C1.1, I think, gets into on that. For one thing, how is he thwarting the investigation? I mean, it strikes me as, first of all- Well, because they think it's part of an illicit drug transaction, right? It comes up with a fraudulent- But who does- It was part of an innocent transaction. But who does that? I mean, my guess is that rather than thwart- What does that mean? Who does what? Who writes a letter to the DEA after getting stopped and having- Well, somebody who's obstructing an investigation. Well, I don't know, Your Honor. It seems to me that more likely than not, this is a gentleman who is heavily on oxys because of his sickle cell disease. He was in pain. Okay, so now you're just making excuses for it. But it's not that he wouldn't have known it was an investigation. It's just that, you know, he was- No, I think rather than thwart the investigation, I'm guessing that the DEA agents got a good laugh out of this. I mean, they just pull over some guy, and then he writes them a letter. You know, who writes letters like that? Well, the guidelines say you get the enhancement if you produce a fraudulent document in the course of an investigation, right? Yeah. So it was the course of an investigation. No, I don't- You didn't produce a fraudulent document. Well, I don't concede it was in the course of an investigation. He had no reason to know it was just an investigation. All he knew was that he was stopped, and they seized his money, drugs, and cash. I guess I'm asking this question. Yeah. Is there ever a circumstance where law enforcement comes over, stops you, seizes your property, but it's unrelated to any investigation? There may be a subsequent investigation. I don't- there's no plausible- So he knew there would be an investigation. You're saying he knew there would be an investigation, he just didn't know when it started. Yeah, he just wouldn't have known that when it started. Okay, but the guidelines also say that you can do obstruction in anticipation of an investigation, right? Instruction? Don't the guidelines say that the obstruction enhancement applies if you engage in obstruction in advance of an investigation that could be expected to thwart an investigation? I don't believe so, Your Honor. I think that's one of the issues we raise here. 3C1.1, I think, is pretty clear about purposely calculated and likely to thwart the investigation or prosecution of the offense of conviction. And you've got a whole host of issues involved with that false letter. I mean, we concede the letter was false, obviously, but if it's going to thwart the investigation, the other aspect is what's the material? I mean, as I was saying, I can't see how that materially affected the investigation. So if you concede the letter was false, the last paragraph of the letter is, the day the DEA agents pulled over my car, I was at that address because I was asked to price a job. I was there about 15 to 20 minutes and measured for flooring and paint. That was false. That was clearly false. So isn't the inference that he's trying to explain why he's at this address with a number of pills and, by the way, DEA had been surveilling him. But he wouldn't have known that. Well, he wouldn't have known that, but he would have known that at the time he was stopped in this gentleman's home where he had sold before, the DEA was on to him and to the co-defendant. So what's the purpose of sending a false letter like that other than to say, you know, and now he's been convicted by a jury, so can't a judge consider that as obstruction and attempt to stop the investigation as far as to him? No, Your Honor. But I think I wanted to answer one of the points. Your Honor said, what's the point of sending a letter like this? I've racked my brains trying to figure out why somebody would do this. A poor attempt to get the DEA to look at somebody else. Maybe. Same type of people who kick beehives on the street. It wasn't a smart move. Well, it doesn't have to be smart to be obstruction. That's usually why it's caught. Yes, but it would have to be material and it would have to be with the intent to thwart the investigation. So I guess I have this question. So the provision of the guidelines I was thinking about before, right, is Application Note 1 to 3C1.1 that says that it's still obstruction if it's conduct that occurred prior to the start of the investigation, if the conduct was purposefully calculated and likely to thwart the investigation or prosecution of the offense. Right. So he does not need to know when the investigation was started if he knows that there's going to be an investigation. Right. Okay. I agree. So even if he doesn't know that the investigation has started or when it's going to begin, if he's on notice that they have taken his property and they're likely to start an investigation, it would be obstruction if it was calculated to thwart the investigation. Right. I think it's tough to see how his letter would thwart the investigation. Well, you say that, but, like, you certainly agree that if it were believed that this were an innocent transaction, that would thwart the investigation. You know, and I think in our jurisprudence, the fact that you deny a crime doesn't become obstruction. But he doesn't deny a crime. He creates a fraudulent document that creates an explanation for it. Now, he doesn't just deny that he did something culpable. Well, it was his not very good defense of what may be an obvious accusation since they took his drugs and his money. Okay, I guess I understand what you're saying. What about this? You keep talking about materiality, but, of course, all of the examples that are given in the guidelines of what constitutes obstruction, many of them talk about material information and it being material, but the false, the production of a false document does not mention materiality. No. Why shouldn't we understand that as just saying if, in fact, you produced or attempted to produce a false, altered, counterfeit document or record during an official investigation, that's enough and we don't have to make a separate finding of materiality. I think what we should say is that it, the. Well, we get to say it. Yeah, you do. I think, if Your Honor is pleased, it seems to me that that letter itself was not a very smart move, but did it thwart the investigation? There's no evidence that it did in the record or at trial. But your argument is it wouldn't thwart the investigation because it was so ham-fisted an attempt at a counterfeit document that nobody would believe it. Yes, thank you. But if somebody did believe it, it would thwart the investigation. Yes, Your Honor. Okay. Thank you. All right, you deserve a minute for rebuttal, Mr. Einhorn. Yes, Your Honor, thank you. Now here for Mr. Reardon again. You're on a roll, Mr. Reardon. Thank you, Your Honor. Still Connor Reardon for the United States. I'll start with my friend's assertion that all Mr. Harris knew at the time that the drugs were seized was that he'd been stopped and that stuff was taken out of his car. Actually, at that time he knew that he had been pulled over by DEA after the last in a series of drug transactions. Some 60 in all, stretching back three and a half years and embracing in the aggregate something like 9,000 30 milligram oxycodone pills. He knew that the items that the agents took out of his car were potent evidence of that criminal conduct. $4,400 corresponding precisely to the 220 pills that were taken out of Mr. Meyer's car. The remainder of the pills in his pill bottle and a cell phone that contained a treasure trove of text messages dating back three and a half years. And that if searched, as it ultimately was, would provide a roadmap to his criminal scheme. On these facts, the district court permissibly concluded that Mr. Harris realized what anybody would have realized, which is that the DEA was investigating his drug trafficking. And from there, it's an obvious conclusion that he lied to DEA because he clearly understood that the evidence taken out of his car was damning evidence against him and he wanted to thwart an investigation. Mr. Harris argues that there was no investigation going on, but as a factual matter, there was. I mean, the PSR makes clear that he was stopped and his items were taken precisely because the DEA was investigating his conduct, which it continued to do after the drug seizure by, for example, obtaining bank records. Let's say we're persuaded that he did understand that there was another investigation and he was just sending the letter just to get his stuff back and it wasn't really for the purpose of thwarting the investigation. Would that disqualify him for the enhancement? So I think that that would be an implausible conclusion on this record, Your Honor. I think that even if this panel were to conclude that he really just cared about getting his cell phone back and didn't care that his cell phone contained evidence of criminality that, you know, in the event put him away for five years, even if this panel were to conclude that, like, that's what it thought the record showed, that isn't the question. We're here on clear error review. The district court made a judgment about Mr. Harris's mindset and his motivation. So the question under, as this court has articulated it in cases like Bershchansky and Lewis, is whether the district court's view of the record was permissible or plausible in light of all the evidence. Can I ask you a question about materiality? Yes, Your Honor. You're not questioning whether materiality is required for this enhancement, are you? No, we flag that there has been disagreement, well, not disagreement about that, in the courts of appeals. We note that there are several courts of appeals that say that it is not required when you are dealing with, you know, something. But we've spoken on that, right? Well, I mean, so this court has certainly talked about materiality in the context of the obstruction enhancement. I think it has generally been in the context of obstruction enhancements that are applied on the basis of trial perjury or other perjury Well, I guess there's a question. So is materiality required for documents for a situation like this where there's a false document submitted in the course of an investigation? So other courts of appeals have concluded that it is not, basically on the basis of, you know, expressiveness-type reasoning, right? I mean, we have this application note that speaks to documents. It doesn't mention materiality. We've spoken generally about materiality in the context of obstruction, but some of these examples do require materiality. But we haven't specifically said that application note 4C about producing a false or counterfeit document requires materiality, right? Right. The court has not addressed that question. We flag it in the briefing simply because there are other courts of appeals that have said that it's not required. We don't actually advance the argument. I mean, we start that section of our brief by saying, assuming materiality is required, it's plainly satisfied here. And it is because the standard for materiality is the effect of the lie if it's believed by investigators, not, like, the likelihood that it's going to be successful. And that's consistent with the custom. Right. So even if it is a ham-fisted attempt at persuading them that it was innocent conduct, it would still be material because the test is whether, if it's credited, it would obstruct the investigation, not whether it's likely to be credited. Exactly. This court has said that. If you had written the fraudulent invoice in crayon in a kind of child-like handwriting or something and it was obvious no one would ever credit it, you would still say it was material. Yes, exactly. We ask whether, if believed, it would tend to affect the matter that's under investigation. And in that case, the answer would be yes. That's consonant with a guideline that applies not only to successful obstruction but its attempt. And, I mean, frankly, it's sort of consistent with broader criminal law concepts. I mean, if you fire a gun into a crowd of people and you don't hit anybody and are charged with attempted murder, you can't defend on the ground that you're a lousy shot. Mr. Harris similarly can't defend on the ground that he made a really poor attempt at obstructing the investigation. Did the district court make that finding, or are you saying it's an implicit finding that is obvious on its face? Did the district court make a materiality finding? No, the district court did not specifically address materiality. So is that a problem, or is that not a problem? I mean, it seems like we don't generally require magic words, except when we do. And so I guess that's really the question. No, I think that in the context of application of the obstruction enhancement for trial perjury, which comes up, or just perjury generally, which comes up a lot, because of the Supreme Court's opinion in Dunnegan that basically says you need a bunch of really specific factual findings in order to protect the defendant's right to testify, the district court has to address materiality particularly. Here the district court did apply really the text of the guideline as written, and it found that he willfully intended to interfere with the investigation, which in the government's view is perfectly sufficient, well supported by the record. Why would Dunnegan not apply for the same enhancement? I mean, in other words, why would you have different requirements for perjury as opposed to an obstruction that involves the submission of false documents? I think it's because a criminal defendant has a constitutional right to testify in his own defense, but he doesn't have a constitutional right to send letters to DEA demanding that it return crime evidence. I'm happy to answer any further questions. Thank you. And now we'll hear Mr. Einhorn for a minute. Nothing further, Your Honor. Nothing? All right. No, thank you. Well, thank you both. We will reserve decisions. Thank you.